1  GLANCY PRONGAY & MURRAY LLP
2  Lionel Z. Glancy (SBN 134180)
   Mark S. Greenstone (SBN 199606)
3  1925 Century Park East, Suite 2100
   Los Angeles, California 90067
4  Telephone: (310) 201-9150
   Facsimile: (310) 201-9160
5  E-mail: info@glancylaw.com

6  *Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| MICHAEL ATKINS, individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiff, | **CLASS-ACTION COMPLAINT** |
| v. | 1. Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 |
| INSTAMOTOR INC., a Delaware corporation, | |
| Defendant. | **DEMAND FOR JURY TRIAL** |

## *INTRODUCTION*

1. Plaintiff Michael Atkins ("Plaintiff") brings this class action on behalf of himself and all others similarly situated against Instamotor, Inc. ("Instamotor" or "Defendant") pursuant to Rule 23 of the Federal Rules of Civil Procedure.

2. As alleged below, Defendant has violated the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227, through its unauthorized contact of consumers on their cellular telephones. Specifically, Defendant has violated the TCPA by contacting individuals on their cellular telephones through an automatic telephone dialing system without first obtaining their express written consent, invading their right to privacy.

3. Pursuant to 47 U.S.C. § 227(b)(3), Plaintiff and Class Members are entitled to, *inter alia*, statutory damages and injunctive relief for Defendant's violations.

## *JURISDICTION AND VENUE*

4. *Jurisdiction*. This is a civil action arising under a law of the United States, the TCPA. This Court therefore has subject-matter jurisdiction of this action pursuant to 28 U.S.C. § 1331.

5. *Venue*. As alleged with more particularly below, venue is proper in the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1391 because Instamotor is, and at all times relevant to this action was, a resident of San Francisco, California.

## *PARTIES*

6. Plaintiff is, and at all times relevant to this action was, a resident of San Diego, California. He is, and at all times relevant to this action was, a "person" as defined under 47 U.S.C. § 153.

7. Plaintiff is informed and believes, and based thereon alleges, that Instamotor is a Delaware corporation with its principal place of business located at 650 5th St. #402, San Francisco, California 94107. Instamotor is, and at all times relevant to this action was, a "corporation" and a "person" as defined under 47 U.S.C. § 153.

## *BACKGROUND*

8. Instamotor is a an online and app-based service that allows people to buy and sell used vehicles directly to others without any middleman, and operates the Instamotor service located at

www.instamotor.com. According to the company, each car listed "is verified by automatically analyzing thousands of data points by our algorithms" and manually reviewed by a fraud and safety team to ensure vehicles listed for sale are accurately represented. Unfortunately, Instamotor's penchant for automation extended to illegal marketing tactics, which involved extracting customer information from another website and then contacting those individuals through automated means without proper consent.

9. Specifically, on April 28, 2017, the owner of craigslist.org sued Instamotor for allegedly stealing customer information in order to increase the number of listings on Instamotor. *See Craigslist, Inc. v. Instamotor, Inc.*, No. 3:17-cv-02449 (N.D. Cal.) ("craigslist Complaint").[1] The craigslist Complaint alleges, *inter alia*, that:

> Instamotor harvests, scrapes, or 'extracts' classified ads—and the associated personal and/or contact information of craigslist users—from craigslists's website…Instamotor uses the ad content that it steals from craigslists's website to populate used car listings on its own website and app. As a result, craigslist has received complaints from users who listed their vehicles for sale exclusively on craigslist, only to find out later that their vehicle and contact information was also being displayed without their consent on Instamotor.

craigslist Complaint, ¶¶34-35.

10. The craigslist Complaint further alleges that Instamotor uses the contact information that it steals from craigslist's website "to harass craigslist users with unsolicited text messages and emails advertising Instamotor's services." craigslist Complaint, ¶38.

11. On or about August 3, 2017, only three months after the craigslist Complaint was filed, the parties thereto entered into a Stipulated Judgment and Permanent Injunction Against Instamotor, Inc. *See* Case No. 3:17-cv-02449, Dkt. Entry 24 (the "Stipulated Judgement"). The Stipulated Judgement acknowledges that Instamotor "used automated means to access the craigslist website and scrape

---

[1] craigslist.org, aka "craigslist" is a classified advertisements website with sections divided into various categories, such as jobs, housing, items for sale, services, etc. One of the most successful such platforms in the world, craigslist attracts tens of millions of users who collectively post several hundred million classified ads each year. craigslist Complaint, ¶1.

craigslist content, including postings, pictures, and craigslist users' contact information." The Stipulated Judgement provides for entry of final judgment against Instamotor in the amount of $31,052,314 comprised of: (1) $25,674,300 for violations of the CAN-SPAM Act based on 85,581 emails at $100 per email, trebled pursuant to 15 U.S.C. §7704(b)(1); and (2) $5,378,014 for breach of craigslist's Terms of Use based on collecting personal information ($1 for each email address and $1 for each phone number) from 2,689,007 listings. Notably, the Stipulated Judgment contains no relief for consumers whose rights under the TCPA may have been violated.

### *PLAINTIFF'S EXPERIENCE*

12. During approximately the first half of 2015, Plaintiff listed various car batteries for sale on craigslist. In addition, during approximately October 2015 through May 2016, Plaintiff listed several automobiles for sale on craigslist. Plaintiff included his cellular telephone number 619-XXX-XXXX in his listings.

13. Shortly after listing car batteries for sale on craigslist, Plaintiff began receiving text message solicitations advertising Instamotor to the cellular telephone number he had included in his craigslist listings. Similarly, shortly after listing cars for sale on craigslist, Plaintiff again began receiving text message solicitations advertising Instamotor to the cellular telephone number he had included in his craigslist listings. In addition, Plaintiff received telephone call solicitations advertising Instamotor to this same cellular telephone number, in which there was a brief pause after he answered before a live voice came on the line.

14. At no time had Plaintiff ever signed a document, whether in paper or electronic form, expressly authorizing Defendant—or anyone acting on Defendant's behalf—to make calls to, or send text messages to, his cellular telephone for telemarketing or advertising purposes.

15. At all relevant times to this action, Plaintiff's cellular telephone number was linked to a subscription plan under which he was charged each month for cellular telephone and data services.

16. Plaintiff is informed and believes, and based thereon alleges, that his cellular telephone number, along with numerous other telephone numbers, was entered into a database and that the above alleged phone calls and text messages were made and sent by or on behalf of Instamotor using equipment capable of accessing that database to mass-dial numbers.

17. The above-alleged calls and texts that Plaintiff received were clearly sent without an emergency purpose, as they were sent for the purposes of advertisement or telemarketing to encourage Plaintiff to market and sell vehicles on the Instamotor platform.

18. Plaintiff is informed and believes, and based thereon alleges, that Instamotor placed thousands of similar calls and sent thousands of similar texts, all for advertising or telemarketing purposes, to the cellular-telephone numbers of people who had advertised vehicles on the craigslist.org website, using the equipment referenced in paragraph 16, *supra*. Plaintiff is further informed and believes, and based thereon alleges, that Instamotor never obtained signed authorizations expressly permitting advertising or telemarketing calls, or texts, from any of the individuals to whom the calls and texts were directed.

## *CLASS-ACTION ALLEGATIONS*

19. Plaintiff seeks to represent the following Classes under Rule 23 of the Federal Rules of Civil Procedure:

> **Text Message Class**: All persons throughout the United States who, within four years prior to the filing of this action through the date of certification, received one or more text messages on their cellular telephones made using an automatic telephone dialing system from Instamotor, or any person or entity acting on behalf of Instamotor, made for a marketing or advertising purpose.
>
> **Voice Call Class**: All persons throughout the United States who, within four years prior to the filing of this action through the date of certification, received one or more calls on their cellular telephones made using an automatic telephone dialing system and/or an artificial or prerecorded voice from Instamotor, or any person or entity acting on behalf of Instamotor, made for a marketing or advertising purpose.

20. Plaintiff reserves the right to amend or modify the proposed Classes, or to propose subclasses or limitations to particular issues, in response to facts later ascertained.

21. *Numerosity*. The identities of Class Members may be ascertained from Instamotor's own business and marketing records, as well as the records of Instamotor's telephone provider(s). Joinder of all Class Members would be impracticable due to the sizeable number of such Members and their likely lack of resources to initiate individual claims. Plaintiff estimates that thousands of telephone calls, and

thousands of text messages, were sent to well-over the forty individuals required for numerosity purposes. Also, as explained below, the amount that is owed to any given Class Member under the TCPA is relatively small, making it impractical for them to bring their own individual suits.

22. **_Commonality_**. There are questions of law and fact that are common to the Classes that predominate over any questions affecting only individual Class Members. These common questions include, without limitation:

    a) Whether the voice calls made constitute telemarketing or advertising within the meaning of the TCPA and its regulations;

    b) Whether the text messages sent constitute telemarketing or advertising within the meaning of the TCPA and its regulations;

    c) Whether the equipment used to make the voice calls, and to send the text messages, constitutes an automatic telephone dialing system within the meaning of the TCPA and its regulations;

    d) Whether prior express written consent was required under the TCPA before making any of the voice calls or sending any of the text messages; and,

    e) Whether the outright failure to secure any prior express written consent constitutes willful and knowing behavior within the meaning of the TCPA and its regulations.

23. **_Typicality_**. Plaintiff's claims are typical of those of the Classes because he received voice calls and texts from Instamotor advertising or promoting Instamotor's online platform to sell vehicles during the class period, on his cellular telephone; he never provided prior express written consent to receive those calls and texts; and the calls and texts were placed to him using the same equipment used to place calls and texts to all Class Members on their cellular telephones.

24. **_Adequacy_**. Plaintiff will fairly and adequately represent and protect the interests of the Classes. He is not aware of any conflicts with Class Members, and he plans on pursuing the litigation vigorously. He also has the same interests as those of the Classes, and he has retained counsel who are competent and experienced in class-action litigation. In addition, he has been actively involved in the litigation, he will continue to participate and be available for the duration of the litigation, and he understands the duties that he holds to the Classes.

25. *Superiority*. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Again, the individual joinder of all Class Members is impracticable because of the relatively small recovery amounts at stake and the relative lack of resources available for individual Class Members vis-à-vis the large corporate Defendant. Additionally, the judicial system would be burdened with multiple trials of the same issues, and the potential for inconsistent or contradictory judgments would increase. The common questions detailed above, in fact, predominate in this action, as Class Members' claims arise out of the same course of conduct to which Plaintiff was himself subject. A class action would therefore conserve the resources of the parties and the Court while protecting the rights of Class Members. Instamotor's conduct as described above is unlawful, capable of repetition, and may continue unless restrained and enjoined by the Court. Moreover, it is a matter of public interest to obtain definitive answers to the legality of Instamotor's actions in a single case.

## *FIRST CLAIM FOR RELIEF*

*Violation of the TCPA*

*47 U.S.C. § 227*

26. Plaintiff re-pleads, re-alleges, and incorporates by reference each and every allegation set forth in this Complaint.

27. The United States Congress enacted the TCPA in order to protect and balance individual privacy rights against legitimate telemarketing practices. In enacting this statute, Congress found:

> (1) The use of the telephone to market goods and services to the home and other businesses is now pervasive due to the increased use of cost-effective telemarketing techniques.
>
> . . . .
>
> (10) Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.
>
> (11) Technologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer.
>
> (12) Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

Telephone Consumer Protection Act of 1991, PL 102–243, December 20, 1991, 105 Stat 2394.

28.  The TCPA specifically prohibits automated calls or messages to consumers' cellular-telephone numbers without the express consent or permission of the consumers:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . (iii) to any telephone number assigned to a . . . cellular telephone service . . . .

47 U.S.C. § 227(b)(1). A text message is a "call" within the meaning of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

29.  Under the relevant regulation, effective October 16, 2013, "prior express consent" as used in subsection (b)(1)(A)(iii) of the TCPA means "prior express *written* consent" for all telemarketing or advertising messages. 47 C.F.R. § 64.1200(a)(2) (emphasis supplied). Such consent must be signed by the consumer, must state that the consumer is agreeing to receive future telemarketing or advertising calls and messages, and must be executed independent of any purchase of goods or services. *Id.* at § 64.1200(f)(8).

30.  The foregoing acts and omissions of Instamotor constitute a direct violation of the TCPA. Instamotor was and is aware of the TCPA and its requirements and, on information and belief, intentionally violated the law in an effort to maximize the reach of its program. Instamotor's violations were therefore willful.

31.  The TCPA establishes a private right of action for making unauthorized prerecorded-or-artificial-voice telephone calls, and sending unauthorized text messages, to consumers:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or (C) both such actions. If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3). Pursuant to 47 U.S.C. § 227(b)(3)(B), Plaintiff and Class Members are entitled to an award of $500 in statutory damages for each and every prerecorded-or-artificial-voice telephone

call, and each and every text message, that they received. Moreover, because Instamotor willfully and knowingly violated the TCPA as alleged above, Plaintiff and the Classes are entitled to treble damages. Finally, pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff and the Classes are entitled to injunctive relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment as follows:

1. An order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure;

2. With respect to the first claim for relief, that the Court enter judgment in favor of Plaintiff and the Classes for the period of time four years prior to the filing of this action through the date of certification, as well as for injunctive relief;

3. An award of pre-judgment and post-judgment interest, to the extent allowable by law;

4. An award of attorney's fees and costs of suit, to the extent allowable by law; and,

5. Such further relief as the Court deems fit and proper.

Dated: November 7, 2017                     GLANCY PRONGAY & MURRAY LLP

                                            By: */s/ Mark S. Greenstone*
                                            Lionel Z. Glancy
                                            Mark S. Greenstone
                                            1925 Century Park East, 2100
                                            Los Angeles, CA 90067

                                            *Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury as to all claims for relief.

Dated: November 7, 2017                     GLANCY PRONGAY & MURRAY LLP

                                            By: *s/ Mark S. Greenstone*
                                            Lionel Z. Glancy
                                            Mark S. Greenstone
                                            1925 Century Park East, 2100
                                            Los Angeles, CA 90067

                                            *Attorneys for Plaintiff*